IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| BRENDAN MOON, | * |
| Plaintiff, | * |
| v. | *  Case No.: GJH-21-2750 |
| VERITAS TECHNOLOGIES, LLC, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

In this action, Plaintiff Brendan Moon brings breach of contract and wage claims against Defendant Veritas Technologies, LLC. *See* ECF No. 2. Now pending before the Court is Defendant's Motion to Dismiss. ECF No. 6. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, the Court will deny the Motion.[1]

**I.    BACKGROUND[2]**

Plaintiff Brendan Moon is a resident of Charles County, Maryland. ECF No. 2 ¶ 1.[3] Defendant Veritas is a Delaware data protection and management corporation doing business in Maryland. *Id.* ¶¶ 2, 9; ECF No. 1 ¶ 4. At the relevant time, Defendant was Plaintiff's employer. ECF No. 2 ¶ 3. Plaintiff began working for Veritas in May 2015. *Id.* ¶ 8. Plaintiff served as the

---

[1] Additionally pending are Defendant's Motions to Seal, ECF Nos. 9, 24, Plaintiff's Motion to Seal, ECF No. 19, and a Motion for Leave to Withdraw as Counsel, ECF No. 25. These Motions are granted.

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[3] Unless otherwise noted, all facts herein are taken from Plaintiff's Complaint, ECF No. 2, and presumed true.

1

lead executive and manager for many federal software contracts. *Id.* Plaintiff's compensation consists of an annual base salary that is augmented with target incentive compensation pay, or a commission. *Id.* ¶ 25. The target incentive pay is governed by an annual plan. *See id.*

In January 2020, Plaintiff began discussions with the Social Security Administration ("SSA"), which had a Blanket Purchase Agreement with an authorized reseller of Veritas products. *Id.* ¶ 11. Representatives from the SSA indicated that they were dissatisfied with Veritas. *Id.* Plaintiff undertook enormous efforts to retain the SSA account in reliance on the agreement that he would receive commissions on all subsequent Veritas sales to the SSA. *Id.* ¶¶ 13, 14. As the result of Plaintiff's efforts, the SSA executed a new Blanket Purchase Agreement with Carahsoft, a Veritas distributor, which guaranteed that the SSA would purchase from the reseller for five years. *Id.* ¶ 15. The Blanket Purchase Agreement resulted in several multi-million-dollar sales for Veritas. *Id.* ¶ 19.

In March 2021, the SSA renewed several licenses and purchased 99 terabytes of new licensing from Veritas. *Id.* ¶ 16. On May 19, 2021, a Carahsoft representative informed Plaintiff that the SSA had just ordered 4,600 terabytes worth of licensing, which resulted in $7.3 million in sales for Veritas. *Id.* ¶ 17. Plaintiff contacted his supervisor, Carolyn Hyde, to inform her of the order. *Id.* ¶ 20. Plaintiff explained to Hyde that this purchase was not forecasted because the scope of the project had just become available to the SSA just before the purchase. *Id.* Hyde told Plaintiff that he had "nothing to worry about," which Plaintiff understood to mean that he would be paid his entire promised commission on the deal. *Id.* Plaintiff was also lauded for his efforts. *Id.* ¶¶ 21, 22.

On June 2, 2021, Plaintiff received an email request to review and accept the Fiscal Year 2022 Compensation Plan Terms and Conditions. *Id.* ¶ 27. Plaintiff electronically accepted it. *Id.*

Two weeks later, Plaintiff received another request to accept the same compensation plan due to a technical error. *Id.* Plaintiff accepted the Plan again. *Id.* According to the executed Plan, Plaintiff was owed commissionable earnings of $856,758 for the May 19, 2021 SSA transaction and other transactions. *Id.* ¶ 30.

On July 26, 2021, Plaintiff was informed that Defendant was "reviewing all Q1 bookings this month" but was not informed that the commissions quota would change or that Plaintiff's incentive pay would be reduced. *Id.* ¶ 32. On August 5, 2021, Veritas Vice President Kevin Youngquist told Plaintiff for the first time that Veritas would not pay the promised amount. *Id.* ¶ 33. On August 25, 2021, Plaintiff was provided with a new compensation plan that revised Plaintiff's commissionable earnings significantly downwards—a $620,145 decrease to $236,613. *Id.* ¶¶ 36, 37. Plaintiff did not accept this new compensation plan, and Defendant refused to pay Plaintiff the full amount of Plaintiff's earned commission. *Id.* ¶¶ 39, 40, 41, 43.

Plaintiff filed the Complaint in the Circuit Court for Charles County, Maryland, on September 24, 2021. *See* ECF No. 1-2. Plaintiff alleges violations of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann. § 3-501 *et seq.*, breach of contract, and, alternatively, implied contract or *quantum meruit*. ECF No. 2. Plaintiff requests damages of unpaid commissions, withheld wages, treble damages, compensatory damages, and attorneys' fees and costs. *Id.* Defendant removed the action to this Court on October 26, 2021, pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a).[4] Defendant filed the Motion to Dismiss on November 2, 2021. ECF No. 6. Plaintiff responded, ECF No. 18, and Defendant replied, ECF No. 22. Additionally, both parties filed Motions to Seal. *See* ECF Nos. 9, 19, 24.

---

[4] The parties are diverse, and Plaintiff seeks damages over $75,000. ECF No. 1 ¶¶ 3–5.

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating the sufficiency of the plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

"Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to

4

the complaint as exhibits . . . .'" *Id.* (ellipsis in original) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). The Court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. "To be integral, a document must be one that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Brennan*, 361 F. Supp. 3d at 502 (emphasis and internal quotation marks omitted) (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).

### III. DISCUSSION

#### A. Motions to Seal

The Court first addresses the Motions to Seal. *See* ECF Nos. 9, 19, 24. Defendant's compensation plan is comprised of the Incentive Compensation General Terms and Conditions, the Role-Based Sales Compensation Plan Document, and the Individualized Compensation Plan Document. *See* ECF No. 24 at 1.[5] Defendant has provided two of these documents as exhibits to the Motion to Dismiss briefing. *See* ECF Nos. 8-1, 23-1. The parties request that the Court seal these documents, as well as allow any quotes from the sealed documents to remain redacted. *See* ECF Nos. 9, 19, 24.

Under Local Rule 105.11, "[a]ny motion seeking the sealing of . . . motions, exhibits[,] or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to

---

[5] The Court considers these documents in ruling on this Motion to Dismiss because they are integral to the Complaint and authentic. *See Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Plaintiff does not object and also references the documents. *See* ECF No. 18 at 13–16.

sealing would not provide sufficient protection." "The public's right of access to judicial documents and records is a First Amendment right as well as a common law tradition." *Fonseka v. AlfredHouse ElderCare, Inc.*, No. 14-cv-3498-GJH, 2015 WL 3457224, at *1 (D. Md. May 28, 2015) (citing *Doe v. Public Citizen*, 749 F.3d 246, 265 (4th Cir. 2014)).

"[W]hen a district court is presented with a request to seal certain documents, it must determine two things: (1) whether the documents in question are judicial records to which the common law presumption of access applies; and (2) whether the documents are also protected by the more rigorous First Amendment right of access." *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 316 (D. Md. 2014) (citing *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013)). "[T]he non-moving party must be provided with notice of the request to seal and an opportunity to object. This requirement may be satisfied . . . by docketing the motion reasonably in advance of deciding the issue. In addition, less drastic alternatives to sealing must be considered." *Butler*, 47 F. Supp. 3d at 316 (internal quotations and citations omitted).

As relevant here, "'a corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade secret information, which in turn may justify partial sealing of court records.'" *Fonseka*, 2015 WL 3457224, at *1 (quoting *Doe*, 749 F.3d at 269); *see, e.g.*, *Butler*, 47 F. Supp. 3d at 317 (documents can remain under seal "because they contain confidential and proprietary business information and/or were produced from employee personnel files that contain sensitive personal and commercial information.").

Both parties request that the Court seal the Incentive Compensation document, which is included in its entirety as Exhibit A to Defendant's Motion to Dismiss and is quoted in both Plaintiff's Response and Defendant's Reply. *See* ECF Nos. 9, 19. Defendant also requests that

the Court seal the Role-Based Sales Compensation document, which is attached to and quoted in Defendant's Reply Memorandum. ECF No. 24.

The Incentive Compensation document contains information on the sales strategies and internal operations of Defendant, such as Defendant's commission structure and the targeting of certain lines of business. *See* ECF No. 8-1 at 13. Additionally, there is an express confidentiality provision in the document. *Id.* Moreover, the parties agree that the Incentive Compensation document is confidential and should be sealed. *See* ECF No. 9 at 5; ECF No. 19 at 1. Similarly, the Role-Based Sales Compensation document contains confidential and proprietary business information related to Defendant's compensation structure, recruiting, and business targets. ECF No. 23-1 at 1, 2. The Role-Based Sales Compensation document is also marked "confidential" on every page. *Id.* Finally, Plaintiff has not opposed the sealing of the Role-Based Compensation document.

The parties have complied with procedural requirements, and both documents contain confidential and proprietary business information. Additionally, the confidential information is not limited to one aspect of the documents, so just redacting sections of the documents would not be sufficient to protect the confidentiality of the information. Thus, the Court grants the Motions to Seal. *See* ECF Nos. 9, 19, 24. The entirety of Exhibit A to the Motion to Dismiss and Exhibit A to the Reply will remain sealed. *See* ECF Nos. 8, 23. Quoted language from the sealed documents in the briefing will remain redacted. *See* ECF Nos. 7, 18, 22.

**B. Motion to Dismiss**

In the Complaint, Plaintiff alleges that Defendant failed to pay Plaintiff earned commissions in violation of the Defendant's Fiscal Year 2022 Incentive Compensation Plan ("the FY22 Plan"). ECF No. 2 ¶ 42. Plaintiff brings a Maryland Wage Payment and Collection Law claim ("MWPCL") (Count I), a breach of contract claim (Count II), and, in the alternative, a

*quantum meruit* claim (Count III). Defendant has moved to dismiss all counts for failure to state a claim. ECF Nos. 6, 8.

### 1. MWPCL claim

In Count I, Plaintiff alleges that Defendant has failed to pay wages due for work in violation of the MWPCL, Md. Code Ann., Lab. & Empl. § 3-505. ECF No. 2 ¶ 53. Plaintiff alleges that commissions, or incentive payments, were wrongfully withheld from him in violation of the statute. *Id.* ¶¶ 55, 56. In response, Defendant argues that the commissions are not "wages." ECF No. 8 at 17.

"The MWPCL provides 'a remedy to employees who are attempting to collect lost wages' from an employer." *Hausfeld v. Love Funding Corp.*, 131 F. Supp. 3d 443, 455 (D. Md. 2015) (quoting *Cunningham v. Feinberg*, 441 Md. 310, 107 A.3d 1194, 1203 (2015) (citations omitted)). "Under the MWPCL, employers must pay employees 'all wages due for work that the employee performed before the termination of employment,' including commissions." *Id.* (quoting Md. Code Ann., Lab. & Empl. §§ 3-505(a), 3-501(c)(2)(ii)). "[A]n employee's right to compensation vests when the employee does everything required to earn the wages." *Medex v. McCabe*, 372 Md. 28, 41, 811 A.2d 297, 305 (2002).

"Wages" means "all compensation that is due to an employee[,]" including, as relevant here, "a bonus[,]" "a commission[,]" or a "fringe benefit[.]" Md. Code Ann., Lab. & Empl. § 3-501(c). "[I]t is the exchange of remuneration for the employee's work that is crucial to the determination that compensation constitutes a wage." *Medex*, 372 Md. at 28 (citing *Whiting-Turner v. Fitzpatrick*, 366 Md. 295, 783 A.2d 667 (2001)). "Where the payments are dependent upon conditions other than the employee's efforts, they lie outside of the definition." *Id.* In *Medex*, the Maryland Court of Appeals determined that "incentive fees . . . related directly to sales made by the employees during a defined fiscal year . . . were compensation for work

performed, and thus, wages under the Act." *Id.* at 37. In contrast, in *Whiting-Turner*, "the parties agreed on a salary and, after two years of employment and depending on the profitability of the company, profit sharing." *Whiting-Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 305, 783 A.2d 667, 673 (2001). However, the employee was given the bonus before he had been employed for two years. *Id.* The accelerated bonus was "not a part of the compensation package promised, it is merely a gift, a gratuity, revocable at any time before delivery." *Id.* To be "wages" under the statute, the "wages must have been 'promised for service.'" *Id.* (quoting Md. Code Ann., Lab. & Empl. § 3-501(c)(2)(v)).

Plaintiff alleges that the commissions are part of his overall compensation package and are "wages." ECF No. 2 ¶ 54. The commissions are governed by a fairly comprehensive set of documents in the FY22 Plan. *See* ECF No. 8-1 (FY22 Incentive Compensation Plan); ECF No. 23-1 (FY22 Role-Based Sales Compensation Plan). The FY22 Plan defines "incentives" as "[i]ncluded in all compensation plans and are defined as a form of variable pay tied to the attainment of the Plan Participant-specific quantitative objectives." ECF No. 8-1 at 6. The Plan also notes that employees "are allowed the opportunity to earn [a] commission and/or bonus" in accordance with the Plan. ECF No. 23-1 at 2. The Plan then sets out specific objectives and measures. *See* ECF No. 23-1 at 3 (employee measures for "attaining and exceeding his/her annual new license quote" and measures for "attaining and exceeding his/her booked annual recurring revenue quota"). The Plan also sets out formulas to calculate a "personal commission rate." *Id.* at 2.

While the FY22 Plan does specify in several provisions that Defendant has discretion to modify the objectives and measures, *see, e.g.*, ECF No. 8-1 at 14, in at least two sections, the Plan specifies that modifications "must receive approval from the Compensation Exception

Committee" and "[n]o modification will be effective unless set out in writing and approved in accordance with the CEC and/or the terms of this Plan[,]" ECF No. 8-1 at 12, 14.

Based on these provisions and the detailed guidance governing incentive pay, the Court cannot conclude that the commissions were so clearly discretionary that they were a mere gratuity or gift. *Compare Mazer v. Safeway, Inc.*, 398 F. Supp. 2d 412, 426 (D. Md. 2005) (a "bonus" was not a "wage" when the employer had no standard guidance on calculating bonuses, bonuses were "shrouded in mystery," and an employee "did not know whether he would ever receive a bonus."). Instead, like in *Medex*, 372 Md. at 37, Plaintiff alleges, and the Plan provisions do not contradict, that "the incentive fees were related directly to sales made by the employees during a defined fiscal year." *See also Knickerbocker v. AvePoint, Inc.*, No. 20-cv-505-BPG, 2021 WL 927454, at *7 (D. Md. Mar. 11, 2021) (denying a motion to dismiss because "plaintiff's MWPCL claim seeks the payment of commissions that are alleged to be a part of his overall compensation plan which, if proven, would constitute wages.").

Additionally, the Court must accept Plaintiff's allegations as true and draw reasonable inferences in his favor. Plaintiff has plausibly alleged that he is owed "wages." Plaintiff also alleges that he performed the work necessary to obtain these "wages[,]" and thus his right to the wages vested, *see* ECF No. 2 ¶ 55. Plaintiff has adequately stated a plausible claim for relief under the MWPCL.

### 2. Breach of contract claim

In Count II, Plaintiff alleges that Defendant breached the FY22 Plan. ECF No. 2 ¶¶ 65, 67. "To establish a claim for breach of contract, Plaintiff must demonstrate that a contract was formed, Defendant breached the contract, and Plaintiff suffered damages as a result." *5050 Tuxedo, LLC v. Neal*, No. 16-cv-1849-GJH, 2017 WL 935877, at *5 (D. Md. Mar. 8, 2017) (citing *Antonio v. Sec. Servs. of Am., LLC*, 701 F. Supp. 2d 749, 761 (D. Md. 2010) (citing

*Parlette v. Parlette*, 88 Md. App. 628, 640 (Md. Ct. Spec. App. 1991))). "'The formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'" *Id.* (quoting *Pruitt v. Bank of Am., N.A.*, No. 15-cv-1310-TDC, 2016 WL 337531, at *3 (D. Md. Jan. 28, 2016) (citations omitted)). "Generally, when interpreting a contract's terms, our primary consideration is the 'customary, ordinary, and accepted meaning' of the language used." *Fister ex rel. Est. of Fister v. Allstate Life Ins. Co.*, 366 Md. 201, 210, 783 A.2d 194, 199 (2001) (quoting *Cole v. State Farm Mut. Ins. Co.*, 359 Md. 298, 305, 753 A.2d 533, 537 (2000) (internal quotations and citations omitted)).

Maryland courts "attempt to construe contracts as a whole, to interpret their separate provisions harmoniously, so that, if possible, all of them may be given effect." *Walker v. Dep't of Hum. Res.*, 379 Md. 407, 421, 842 A.2d 53, 61 (2004) (internal citations omitted)). "When a contract is clear and unambiguous, 'its construction is for the court to determine.'" *Horlick v. Cap. Women's Care, LLC*, 896 F. Supp. 2d 378, 394 (D. Md. 2011) (quoting *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251, 768 A.2d 620, 630 (2001) (citation omitted)). But an "ambiguous contract provision is a factual determination that precludes dismissal on a motion for failure to state a claim." *Hardwire LLC v. Goodyear Tire & Rubber Co.*, 360 F. Supp. 2d 728, 736 (D. Md. 2005) (citing *Martin Marietta Corp. v. Int'l Telecommunications Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992)). "A contract is ambiguous if 'susceptible of two reasonable interpretations.'" *Id.* (quoting *World–Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 245 (4th Cir. 1992) (internal quotations and citations omitted)). Thus, if an agreement is "ambiguous in at least one material respect[,]" resolving the issue on a motion to dismiss is not appropriate. *Horlick*, 896 F. Supp. 2d at 394.

Here, Plaintiff alleges that he electronically accepted the FY22 Plan in June 2021. ECF No. 2 ¶ 27. Pursuant to the executed Plan, Plaintiff alleges that he had an annual quota of $2,158,968.64 for "M1: LICENSE" and an annual quota of $12,783,880.56 for "M2: RENEWAL/SUPPORT." *Id.* ¶ 28. As explained in the FY22 Role-Based Sales Compensation Plan, the "purpose of [the Measures] is to reward Plan Participants for attaining and exceeding" the annual new license quota and the annual recurring revenue quota. ECF No. 23-1 at 3.

Plaintiff alleges that, pursuant to the FY22 Plan executed in June 2021, an employee is entitled to a commission when:

> (i) the Company has been irrevocably paid in full by the customer on the applicable transaction/s
> (ii) the transaction/s is/are not subject to dispute by the customer; and
> (iii) it is confirmed that the sale does not relate to unauthorized products or services, or is made pursuant to unauthorized non-standard terms and conditions[.]

*Id.* ¶ 44; *see also* ECF No. 8-1 at 26 ("Incentives Entitlement"). Plaintiff alleges that any review of an employee's quota or commissions must occur within 30 days. *Id.* ¶ 35; *see also* ECF No. 8-1 at 16. Finally, Plaintiff alleges that incentive payment is due at the end of the month following the deal closure. *Id.* ¶ 34; *see also* ECF No. 23-1 at 2. The FY22 Plan's terms do not contradict these allegations. *See Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit . . . , the exhibit prevails[.]").

Plaintiff alleges that Defendant was paid in full, there is no dispute by the customer, and the sale was for authorized products at an approved price, so Defendant was required to pay the commission at the end of the month following the deal—or the end of June 2021. *Id.* ¶ 34. Plaintiff also alleges that he was not notified of any "review" of his commissions until August, well after the 30-day time period. *Id.* ¶ 35. Thus, Plaintiff alleges that he was guaranteed

12

commissionable earnings of $856,758 for the SSA transaction and other transactions closed since the beginning of Fiscal Year 2022 in April 2021.[6] *Id.* ¶ 30. Instead, Plaintiff was notified in August 2021 that the FY22 Plan was being revised, retroactively decreasing Plaintiff's commission to $236,613 for the same transactions. *Id.* ¶ 36. Plaintiff refused to accept this modification. *Id.* ¶ 39.

Defendant first argues that because the Plan allowed Defendant "absolute authority" to change the Plan's terms and conditions at any time, there was no legally enforceable agreement between the parties. ECF No. 8 at 7. Defendant argues that the discretion rendered Defendant's promise to pay the incentive payments illusory. *Id.* at 13. In response, Plaintiff argues that, at the very least, there is ambiguity in the Plan that cannot be resolved on a motion to dismiss. ECF No. 21 at 10.

> The FY22 Plan contains several references to modification and review of the Plan:
>
> The Company reserves the right to amend the Plan and related policies and procedures including but not limited to quota, compensation bookings credit, and draws/advances prospectively or retroactively, with or without prior written notice, at its complete discretion.
>
> Any modification/s and exception/s to the Plan must receive approval from the Compensation Exception Committee (CEC)[.]

ECF No. 8-1 at 12. The FY22 Plan also sets out "Circumstances for Change," which details circumstances in which aspects of the Plan may be reviewed or modified, including a participant's commission or quota that "result[ed] in overachievement" or "unintended or unexpected earnings occur resulting in quota over-attainment." *Id.* at 14. The Plan may also be modified in the "sole discretion" of Veritas. *Id.* at 15. Additionally:

---

[6] The Incentive Compensation Plan states that the Plan "applies to transactions booked during the 2022 Fiscal Year from April 3, 2021 through April 1, 2022." ECF No. 8-1 at 10.

> [A]ny modifications undertaken in this section are likely not to be made until after the transactions have been booked or after the close of the fiscal year, which is when the Company will have visibility into the Plan Participant's exceeding 250% OTC.
>
> Accordingly, the Company retains the right, subject to applicable local law, to make appropriate modifications at any time during the fiscal year and until final year-end closing and reconciliation of Plan Participants' Plan.

*Id.* at 16. However, the Plan also states that:

> No modification will be effective unless set out in writing and approved in accordance with the CEC and/or the terms of this Plan.

*Id.* at 13–14. The Plan also specifies that review of an employee's commissions, particularly to ascertain if there was an error in setting an employee's quota or if the employee closed a "windfall" deal, "will occur within thirty (30) calendar days after the month-close." *Id.* at 16, 17.

The court in *Windesheim v. Verizon Network Integration Corp.*, 212 F. Supp. 2d 456, 462 (D. Md. 2002), tackled a similar issue and explained several principles of Maryland contract law. The court explained that, in Maryland, an employer's "unlimited discretion . . . to reduce, modify, recover or withhold incentive pay . . . in [its] sole discretion" renders a promise "illusory," or "not legally enforceable in an action for breach of contract." *Id.* Of primary importance in the *Windesheim* court's reasoning, however, was the "[l]ongstanding Maryland legal principle[] . . . that no enforceable contractual obligation is created when an employer offers employees a bonus for doing that which an employee is already required to do pursuant to the terms of the engagement of employment." *Id.* (citing *Johnson v. Schenley Distillers Corp.*, 181 Md. 31, 28 A.2d 606 (1942) (collecting cases)). That "promise" is illusory because there is no consideration. *Id.* But here, Plaintiff alleges that the incentive payments were supplementary compensation directly tied to specific performance objectives. *See* ECF No. 2 ¶ 70. Based on these allegations, which are not plainly contradicted by the terms of the Plan, the Court cannot

conclude that there was no consideration for Defendant's promise such that there was no mutuality of assent.

Additionally, in *Windesheim*, 212 F. Supp. 2d at 463, the employer had "unlimited discretion" to modify bonuses or not even award them at all. *See also Korba v. Stanley Black & Decker, Inc.*, No. 12-cv-1989-DKC, 2012 WL 6019570, at *6 (D. Md. Nov. 30, 2012) ("Statements regarding an employee bonus plan cannot, however, form the basis of an enforceable contract where its terms give the employer discretion as to whether to award a bonus at all."). Here, the FY22 Plan has a detailed compensation structure and, according to some provisions, some limitations on when and how Defendant could modify the Plan or review an employee's quota or commissions.

In *Marciniak v. Veritas Techs. LLC*, 2021 WL 1627250, at *3 (D. Ariz. Apr. 27, 2021), a case involving Veritas with similar facts, the Arizona court rejected Veritas's argument that the discretion granted in a similar compensation plan rendered the agreement invalid. *Id.* at *4. The court highlighted that though there were many provisions allowing for modification of the plan's terms, there were at least some limitations on that discretion:

> The Plan does afford discretion to the Company to modify all aspects of the Plan. However, "[n]o modification will be effective unless in writing and approved in accordance with the published FY20 Sales Compensation Governance Approval Matrix and/or the terms of this Plan. The approval process need not be complete before a modification becomes effective – approval can be given retroactively." Further, the Plan sets forth specific circumstances in which retroactive modifications to employee compensation may be made[.]
>
> In light of Arizona's disfavor of interpretations which render a contract void, Arizona's previous affirmation of the validity of a commission agreement modified by a discretionary clause, and the limitations of the exercise of discretion present in the Plan, the Court finds that the plan does not afford unfettered discretion as Defendant argues.

> The [Amended Complaint] adequately pleads the existence of a contract that provides for an incentive plan. The discretion afforded the company does not render the contract illusory.

*Id.*

Similarly, here, while the FY22 Plan includes several references to Defendant's discretion, it also includes limitation on that discretion. *See, e.g.*, ECF No. 8-1 at 14 ("[N]o modification will be effective unless set out in writing and approved in accordance with the CEC and/or the terms of this Plan."). The Court must interpret "separate provisions harmoniously" and attempt to give them all effect. *Walker*, 379 Md. at 421. At the very least, there are competing provisions within the Plan that create ambiguity over whether Defendant retained sole and absolute discretion to amend the Plan at any time. *See, e.g.*, *Smith v. Railworks Corp.*, 2011 WL 2016293, at *3 (S.D.N.Y. May 17, 2011) (denying a motion to dismiss under Maryland law because "an employer's absolute discretion to withhold or modify a bonus must be set forth unambiguously" and the plan at issue "lacked the 'magic words' that would 'make[ ] it absolutely clear that [the employer] was to have complete discretion in determining whether to award any compensation to [plaintiff] for services rendered.'"). The Court may not resolve this ambiguity on a motion to dismiss. Plaintiff has adequately pleaded the existence of a binding contract.

Defendant next argues that, even assuming that there was a valid contract, Defendant did not breach it. ECF No. 8 at 14. Defendant argues that the terms of the contract allow Defendant to modify Plaintiff's incentive pay, even retroactively. *Id.* Defendant also argues that Plaintiff refused to accept the new modified Plan and thus, under the Plan's terms, he is no longer eligible for commissions. *Id.* at 15.

As discussed, given the competing provisions in the Plan, there is sufficient ambiguity as to Defendant's obligations and discretion that the Court may not resolve the issue on a motion to dismiss. Plaintiff has alleged that the two parties executed a contract that entitled Plaintiff to certain commissions paid by the end of June 2021. ECF No. 2 ¶ 34. Plaintiff alleges that he completed the work necessary to earn the commissions, Defendant materially breached by failing to pay the promised amount, and Plaintiff suffered damages. *Id.* ¶¶ 47, 82. Plaintiff also alleges that a review and modification of his commissions and quota did not occur within 30 days. *Id.* ¶ 35. Plaintiff has made allegations that plausibly state a claim for breach of contract.[7]

### 3. Quantum Meruit

In the last count, Plaintiff asserts that, in the alternative, he is entitled to recover under *quantum meruit* or unjust enrichment. ECF No. 2 ¶ 73. This Court has explained:

> "Quasi-contract remedies are equitable remedies that permit recovery, 'where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'" *County Commissioners v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 94 (2000). These remedies are not available where a contract exists, but "parties may plead alternative theories of liability, indeed as many theories as the facts will fit." *Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002).

*Havtech, LLC v. Allegheny Eng'g Co.*, No. 18-cv-1139-GJH, 2018 WL 6423893, at *3 (D. Md. Dec. 4, 2018). To state a claim for recovery under either *quantum meruit* or unjust enrichment, a plaintiff must allege:

> "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make

---

[7] Additionally, the parties dispute whether some of these provisions are even lawful. "Contractual language between the parties cannot be used to eliminate the requirement and public policy that employees have a right to be compensated for their efforts . . . [A] contract conflicting with public policy set forth in a statute is invalid to the extent of the conflict between the contract and that policy." *Medex*, 372 Md. at 39 (internal quotations and citations omitted). The Court does not need to resolve this issue now.

> it inequitable for the defendant to retain the benefit without the payment of its value." *Swedish Civil Aviation Admin.*, 190 F. Supp. 2d at 792–93.

*Id.* In the Complaint, Plaintiff alleges that "Veritas was the recipient of Plaintiff's extensive professional services that resulted in Defendant Veritas obtaining the lucrative SSA deal." ECF No. 2 ¶ 74. Plaintiff also alleges that retaining the SSA account meant that Veritas was assured "significant sales" in the future. *Id.* ¶ 12. Plaintiff has thus alleged a "benefit." Next, Plaintiff alleges that his supervisors congratulated Plaintiff on the deal and appreciated that the transaction "put Veritas over its target for the quarter." *Id.* ¶ 21. Additionally, "Plaintiff Moon was broadly recognized within Veritas for his successful efforts to secure such a profitable deal for the benefit of the Company." *Id.* ¶ 22. Plaintiff has alleged knowledge or appreciation of the benefit by Defendant. Finally, Plaintiff alleges that his supervisors were aware that Plaintiff expected commissions from the deal and assured him that he would be compensated. *Id.* ¶¶ 20, 21, 26, 76, 79. Plaintiff alleges that he undertook extensive efforts because of his belief that he would be compensated. *Id.* ¶ 78. Plaintiff has alleged that it would be inequitable to deny him the promised commissions. Therefore, Plaintiff alleges a claim for *quantum meruit*.

Defendant argues that Plaintiff has already been adequately compensated. ECF No. 8 at 22. But Plaintiff alleges that Defendant accepted a large benefit ($7.3 million in sales) and, in exchange, attempted to pay Plaintiff a diminished incentive payment ($236,613 instead of $856,758). ECF No. 2 ¶¶ 30, 37. Plaintiff has adequately alleged inequitable circumstances. *See, e.g.*, *Makowski v. Bovis Lend Lease, Inc.*, No. 10-cv-1844-RDB, 2011 WL 1045635, at *11 (D. Md. Mar. 17, 2011) (allegations were sufficient to constitute unjust enrichment when plaintiff alleged that he "worked hundreds of hours of overtime and weekend hours in order to enable the . . . project team to meet the second milestone, and that he did so with the expectation of receiving a portion of the Client Funded Bonus in return.").

Finally, Plaintiff is not required to allege "bad faith" for this claim. *See* ECF No. 8 at 20. An allegation of "bad faith" is required when both parties acknowledge that there is an express contract, and the plaintiff is pleading *quantum meruit* in the alternative. *See Kwang Dong Pharm. Co. v. Han*, 205 F. Supp. 2d 489, 497 (D. Md. 2002) ("In Maryland, courts may allow a[n] unjust enrichment claim where there is a contract if there is evidence of fraud or bad faith."). Where, as here, "the existence of a contract concerning the subject matter is in dispute[,]" there is no requirement to also plead bad faith. *See Swedish Civ. Aviation Admin.*, 190 F. Supp. 2d at 792. Thus, Plaintiff has adequately pled a claim for *quantum meruit*.

## IV.     CONCLUSION

For the reasons discussed, the Motions to Seal are granted. The Motion to Dismiss is denied. A separate Order follows.

Dated:  August 12, 2022                                   /s/_____
                                                      GEORGE J. HAZEL
                                                     United States District Judge