## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| BRENDAN MOON, | * |
| Plaintiff, | * |
|  | * |
| v. | * |
|  | * Civil No. 21-2750-BAH |
| VERITAS TECHNOLOGIES LLC, | * |
|  | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM OPINION

Brendan Moon ("Moon" or "Plaintiff") brought suit against Veritas Technologies LLC ("Veritas" or "Defendant") alleging breach of contract, violations of the Maryland Wage Payment and Collection Law ("MWPCL"), and quantum meruit/unjust enrichment. ECF 2 (complaint). On December 27, 2024, the Court granted Defendant's motion for summary judgment. ECF 108. Pending before the Court is Plaintiff's Motion to Alter or Amend the Judgment under Rule 59(e) (the "Motion"). ECF 112.[1] The unredacted memorandum in support of the Motion was filed under seal. ECF 113. Defendant filed an opposition, ECF 116, and Plaintiff filed a reply, ECF 119.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Plaintiff's Motion, ECF 112, is

---

[1] Plaintiff filed an initial Motion, ECF 111, and then filed a corrected version, ECF 112.

[2] Defendant also filed a redacted brief. ECF 115. Additionally, Plaintiff filed a redacted reply in support of the Motion. ECF 118. The Court references the parties' unredacted briefs in this opinion.

**DENIED**. In addition, for the reasons stated below, three pending motions to seal, ECFs 114, 117, and 120, are **GRANTED**.[3]

## I.    BACKGROUND

The relevant facts are laid out in the Court's December 27, 2024 memorandum opinion. ECF 107.[4] The Court assumes the parties' familiarity with the background of the case given the stage of the litigation.

## II.    LEGAL STANDARD

A party may move to alter or amend a judgment under Rule 59(e). *See* Fed. R. Civ. P. 59(e). The United States Court of Appeals for the Fourth Circuit has repeatedly recognized that a final judgment may be amended under Rule 59(e) in only three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *See, e.g., Gagliano v. Reliance Std. Life Ins. Co.*, 547 F.3d 230, 241 n.8 (4th Cir. 2008); *accord Fleming v. Maryland Nat'l Cap. Park & Planning Comm'n*, DKC-11-2769, 2012 WL 12877387, at *1 (D. Md. Mar. 8, 2012). "This Court has emphasized that '[c]lear error or manifest injustice occurs where a court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension . . . .'" *Negash v. United*

---

[3] Due to the granting of the motions to seal, many of the filings referenced in this opinion are sealed. Though the Court has drafted this opinion to avoid as much sensitive material as possible, the memorandum opinion will be initially filed under seal. The parties shall have twenty-one (21) days from its issuance to file a position, under seal, on what portions of the opinion must remain under seal. The Court intends to issue a public version of this opinion with necessary redactions after reviewing any submissions from the parties. The Court's accompanying implementing Order will not be filed under seal.

[4] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

*States*, No. RDB-17-1954, 2018 WL 3428716, at *3 (D. Md. July 16, 2018) (quoting *Wagner v. Warden*, Civ. No. ELH-14-791, 2016 WL 1169937, at *3 (D. Md. Mar. 24, 2016) (internal quotation marks omitted)), *aff'd*, No. 18-1869, 2019 WL 2005678 (4th Cir. May 7, 2019).

A litigant's "mere disagreement" with a ruling is not enough to justify a motion for reconsideration. *Lynn v. Monarch Rec. Mgmt, Inc.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013). Accordingly, "the prior judgment cannot be 'just maybe or probably wrong; it must . . . strike the court as wrong with the force of a five-week-old, unrefrigerated dead fish.'" *Fontell v. Hassett*, 891 F. Supp. 2d 739, 741 (D. Md. 2012) (citation omitted). In other words, the Court's previous judgment must be "dead wrong." *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009).

Additionally, a Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also Kelly v. Simpson*, RDB-16-4067, 2017 WL 4065820, at *1 (D. Md. Jan. 26, 2017); *Lynn v. Monarch Rec. Mgmt, Inc.*, 953 F. Supp. 2d 612, 620 (D. Md. 2013). In short, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403 (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed.1995)). "The district court has considerable discretion in deciding whether to modify or amend a judgment." *Fleming*, 2012 WL 12877387, at *1.

## III.   **ANALYSIS**

### A.   **Motions to Seal**

The Court first addresses the motions to seal. *See* ECFs 114, 117, 120. Plaintiff and Defendant incorporate by reference Defendant's Motion to Seal Its Unredacted Memorandum of Points and Authorities in Support of Its Motion for Summary Judgment and Select Exhibits, ECF 85, and request that the Court permit redacted filings of the briefs for the same reasons the parties

3

previously requested that certain portions of the record remain redacted.[5] ECF 114; ECF 117; ECF 120. Plaintiff indicates that while the briefs do not include exhibits, the briefs "reference[] exhibits from the Summary Judgment pleadings at issue in this case," and "contain[] references to sections and quotes related to proprietary information." ECF 120, at 1.

Under Local Rule 105.11, "[a]ny motion seeking the sealing of . . . motions, exhibits[,] or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." The common law presumes that the public has a right to inspect judicial records and documents. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). This presumption of access, however, may be overcome if competing interests outweigh the interest in access. *Id.*

"[W]hen a district court is presented with a request to seal certain documents, it must determine two things: (1) whether the documents in question are judicial records to which the common law presumption of access applies; and (2) whether the documents are also protected by the more rigorous First Amendment right of access." *Butler v. DirectSAT USA, LLC*, 47 F. Supp. 3d 300, 316 (D. Md. 2014) (citing *In re Application of the United States for an Order Pursuant to 18 U.S.C. Section 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013)). "[T]he non-moving party must be provided with notice of the request to seal and an opportunity to object. This requirement may be satisfied . . . by docketing the motion reasonably in advance of deciding the issue." *Butler*, 47 F.

---

[5] At the summary judgment stage, Defendant moved to seal the FY22 Plan, other select exhibits, deposition transcripts, and an unredacted copy of its memorandum in support of its motion for summary judgment, pursuant to the stipulated protective order, ECF 48, and to "protect its confidentiality and propriet[ary] business information from competitors." ECF 85-1, at 4.

Supp. 3d at 316 (internal quotations and citations omitted). Before sealing, the Court must consider less drastic alternatives. *Id.*

As relevant here, a corporation "may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records." *Doe v. Public Citizen*, 749 F.3d 246, 269 (4th Cir. 2014); *see also Butler*, 47 F. Supp. 3d at 317 (holding documents can remain under seal "because they contain confidential and proprietary business information and/or were produced from employee personnel files that contain sensitive personal and commercial information.").

The parties have complied with procedural requirements, and the Court finds that certain documents and deposition testimony contain confidential and proprietary business information. As the Court previously found, "Veritas has a strong interest in keeping its compensation plan confidential, the public has little use for it, and competitors could use it to Veritas' disadvantage." ECF 107, at 12. There is no opposition to any of the motions to seal by the adverse party or any other interested party, and the parties used redactions only to the extent necessary. Quoted language from the sealed documents in the parties' redacted briefs (ECFs 112, 115, and 118) will remain redacted. Accordingly, the motions to seal at ECFs 114, 117, and 120 are granted.

## B.    Motion to Alter/Amend the Judgment

At its core, the dispute between the parties, at summary judgment and now on the motion to amend the judgment, is over *when* commissions are deemed earned under the FY22 Incentive Compensation General Terms and Conditions and the FY22 Role-Based Sales Compensation Plan (collectively "the Plan"). *See* ECF 119-1, at 7 ("Whether or not the commission was earned consistent with the Plan is a genuine dispute of fact."). The Court previously found that the Plan is an annual plan that operates with annual quotas and thus commissions are earned only at the end

of the Plan year. *See generally* ECF 107. Plaintiff asserts that "by considering extrinsic evidence in the fashion that this Court did and ignoring any unambiguous language related to when an employee earns commissions, the Court committed an error in law." ECF 119-1, at 5.

Under Maryland law, the interpretation of a contract is "ordinarily a question of law for the court." *Grimes v. Gouldmann*, 157 A.3d 331, 335 (Md. App. 2017); *see also Spacesaver Sys., Inc. v. Adam*, 98 A.3d 264, 268 (Md. 2014); *Myers v. Kayhoe*, 892 A.2d 520, 526 (Md. 2006). "The cardinal rule of contract interpretation is to give effect to the parties' intentions." *Dumbarton Imp. Ass'n. Inc. v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232 (Md. 2013) (citation omitted). To determine the parties' intention, courts look first to the written language of the contract. *Walton v. Mariner Health of Md., Inc.*, 894 A.2d 584, 594 (Md. 2006) ("Generally, when seeking to interpret the meaning of a contract our search is limited to the four corners of the agreement.").

Consideration of extrinsic evidence is unnecessary when a contract is unambiguous. *DIRECTV, Inc. v. Mattingly*, 829 A.2d 626, 630 (Md. 2003) (citations omitted); *see also Clendenin Bros. v. U.S. Fire Ins. Co.*, 889 A.2d 387, 393 (Md. 2006). Conversely, if the contract is ambiguous, "the court must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." *Cnty. Comm'rs of Charles Cnty. v. St. Charles Assocs. Ltd. P'ship*, 784 A.2d 545, 556 (Md. 2001) (citation omitted); *accord John L. Mattingly Const. Co., Inc. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1074 (Md. 2010). For example, if a contract is ambiguous, "'extrinsic evidence may be consulted to determine the intention of the parties and whether the ambiguous language has a trade usage.'" *Mut. Fire Ins. Co. of Calvert Cnty. v. Ackerman*, 872 A.2d 110, 118 (Md. App. 2005) (quoting *Pac. Indem. Co. v. Interstate Fire & Cas. Co.*, 488 A.2d 486, 497 (Md. 1985)). But extrinsic evidence may "not

be used to contradict other, unambiguous language." *Calomiris v. Woods*, 727 A.2d 358, 366 (Md. 1999).

A contract is ambiguous "if, to a reasonable person, the language used is susceptible of more than one meaning or is of doubtful meaning." *Martz v. Day Dev. Co., L.C.*, 35 F.4th 220, 225 (4th Cir. 2022) (citation omitted); *see also Auction & Estate Representatives, Inc. v. Ashton*, 731 A.2d 441, 444-45 (Md. 1999); *Calomiris*, 727 A.2d at 363. To ascertain whether a contract is ambiguous, a court considers "the character of the contract, its purpose, and the facts and circumstances of the parties at the time" that they entered into the contract. *Pacific Indem. Co.*, 488 A.2d at 488. Generally, "ambiguities are resolved against the draftsman of the instrument." *John L. Mattingly Const. Co.*, 999 A.2d at 1078. But "'[i]f only one reasonable meaning can be ascribed to the [contract] when viewed in context, that meaning necessarily reflects the parties' intent.'" *Cnty. Comm'r for Carroll Cnty. v. Forty W. Builders, Inc.*, 941 A.2d 1181, 1209 (Md. App. 2008) (quoting *Lab. Ready, Inc. v. Abis*, 767 A.2d 936, 942 (Md. App. 2001)).

If a court determines that a contract is ambiguous, "'it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis.'" *Washington Metro. Area Transit Auth. v. Potomac Inv. Properties, Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (quoting *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993)). Nevertheless, if "'resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.'" *Id.* (quoting *Goodman*, 7 F.3d at 1126); *see also Sheridan v. Nationwide Ret. Sols., Inc.*, 313 F. App'x 615, 619 (4th Cir. 2009). Put another way, the court may construe an ambiguous contract only "if there is no factual dispute in the

evidence." *C B Structures, Inc. v. Potomac Elec. Power Co.*, 122 F. Supp. 3d 247, 251 (D. Md. 2015) (citation omitted); *see also Chorley Entrs. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 563 (4th Cir. 2015); *Pac. Indem. Co.*, 488 A.2d at 489.

In the Motion, Plaintiff argues that "[t]he only way the Court is invited to review extrinsic evidence is if there is an ambiguity in the agreement," however "the Court skips any identification and analysis of any ambiguities and simply moves forward with its review of selective extrinsic evidence." ECF 119-1, at 4. Defendant responds that Plaintiff's "claimed ambiguity is irrelevant because the Court cites extrinsic evidence showing conclusively that vesting occurs at the end of the fiscal year." ECF 116, at 7.

To the extent clarification is warranted, the Court finds the Plan is unambiguous in at least several respects. First, the plain language of the Plan makes clear that quotas operate on an annual basis. *See* ECF 84-3, at 2 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇; ECF 84-1, at 7 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Second, the Plan plainly states that Veritas ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ECF 84-1, at 13–14; *see*

*also* ECF 84-1, at 12 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇ In addition, Section 3.1(a) says quotas ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 14. The following section, Section 3.2, indicates that:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇



*Id.* at 15. The Court reached its finding that quotas operate on an annual basis and Veritas retains authority to modify those quotas by examining the plain language of the Plan. Plaintiff has offered no evidence to support a finding of clear error at this stage of the litigation.

Section 5.2, however, is susceptible to two interpretations as to when commissions vest. While perhaps the Court could have been more explicit in naming the ambiguity, the consideration of extrinsic evidence was not "an incorrect application of the law," as Plaintiff contends. ECF 119-1, at 7. Because Section 5.2 is susceptible to two different interpretations, the Court examined extrinsic evidence to determine whether there was a genuine dispute of fact over when commissions vest. The Court found that record evidence shows that

ECF 107, at 31. While Section 5.2 creates ambiguity as to when commission is earned, the Court found, after considering the record evidence and the Court's obligation to read the contract as a whole and give effect to as many provisions as possible, there is no genuine dispute that the commission vested at the end of the fiscal year.

The Court did not, as Plaintiff contends, ignore Plaintiff's extrinsic evidence and give credit only to Veritas' extrinsic evidence. Rather, the Court considered *all* of the extrinsic evidence cited by the parties in their briefs at the summary judgment stage and found that there is no genuine dispute of material fact over when commissions are earned. The extrinsic evidence, including the

evidence offered by Plaintiff, shows a dispositive interpretation of the contract, not a genuine dispute over when commissions are deemed vested.

First, Plaintiff argues that Carolyn Hyde's testimony "directly contradicts the conclusion that pay is not vested until the end of the fiscal year." ECF 113-1, at 7. Plaintiff cites the following testimony by Hyde:

> Q: Are you aware of any circumstances where either yourself or someone on your team had been paid his or her earned commission, and then it was later charged back at the end of the fiscal year?
> A: I'm really thinking, trying to recall. I do – don't recall that. I do know of an individual who was wrongly paid commission for someone else's sale. That's happened. Because of the way the sale was posted…
> Q: [Are there] any other circumstances you're aware of?
> A: No.

ECF 97-3, at 16, 64:7–65:1. Hyde also testified:

> Q: So in order to earn the incentive pay, the customer has to pay the invoice in full, is that accurate?
> …
> A: --- seems to be the case, yes.

*Id.* at 76, 304:2–13. But Hyde's testimony does not create a genuine dispute of fact because she does not discuss *when* commissions are deemed "earned." Rather, she merely testifies that she "[doesn't] recall" a time where commissions were "charged back at the end of the fiscal year," and agrees that "in order to earn the incentive pay, the customer has to pay the invoice in full." This testimony does not create a material fact dispute over when commissions vest because being unable to recall an instance where commission was "charged back" at the end of the fiscal year does not provide evidence that such a "charge back" was not contemplated by the terms of the agreement. And while Hyde testified that to earn incentive pay, the customer must pay the invoice in full, Defendant does not dispute this point. Defendant maintains that "Veritas does not dispute full payment is a condition precedent which, when satisfied with the other two conditions in

10

Section 5.2, entitles a plan [participant] to variable pay." ECF 116, at 8. As the Court previously held, Plaintiff was entitled to variable pay under Section 5.2, not a specific sum, because Defendant retained authority under the Plan to modify the annual quota. ECF 107, at 28. Therefore, Hyde's testimony is consistent with the Court's prior reasoning and does not create a genuine dispute of fact.

Similarly, Plaintiff repeats his argument that "Kelie Ginestet, one of Veritas' corporate representatives, testified not once but twice that once the customer has paid the invoice in full and conditions in section 5.2 are met, the sales rep has earned their commissions." ECF 113-1, at 7– 8. Plaintiff cites the following deposition testimony:

> Q. So once the customer paid in full, the transaction was not disputed by the customer, the sale was authorized and did not violate Veritas' code of conduct or supplemental policies as listed in section 5.2 of the FY2022 comp plan, the employee is entitled and earns commissions; is that correct?
> A. So that is a valid statement in the plan. It says that in the plan.

ECF 84-14, at 65, 255:13–19, at 256:19–20.

> Q. Once the customer has paid the invoice in full, the sales rep has earned their commission, correct?
> A. Those are the words, yes.

Id. at 66, 258:1–6. As Defendant previously pointed out, however, "Ginestet testified Section 5.2 says what it says, but when asked *when* Account Managers earn commissions under the FY22 Plan, she stated 'so until the plan is completed for that year annually, those [commissions] are not earned, because we issue an annual plan. So technically, those are not earned.'" ECF 103, at 9 (citing ECF 84-14, at 66, 259:10–11, 260:5–8) (emphasis and alteration in original). Ginestet's agreement that Section 5.2 "says what it says" provides no more clarity on the meaning of Section 5.2 than the words of Section 5.2 itself. Thus, Plaintiff's cited portions of Ginestet's testimony are insufficient to create a genuine dispute of fact. And further, Ginestet repeatedly testified that

commissions become earned only after the Plan year ends, which supports the Court's conclusion. *See* ECF 84-14, at 71, 279:15–280:1 ("That's an annual . . . plan that you earn against and it's not fully earned until you close the plan . . . we can change retroactively or prospectively comps bookings credit, quota, draws, and advances, so it's not fully earned by someone until the plan closes at the of year."); *id.* at 66, 261:7–10 ("[W]e look at the plan and manage it on an annual basis and all commissions are not earned until the end of the plan."); *id.* at 68, 269:10–14 ("You will receive an annual plan, and it is not fully earned until the end of the plan because there are circumstances that could come up during the year that would change the earnings against that plan."). Ginestet's testimony is consistent with, not contradicted by, the Court's opinion, and Ginestet's testimony that Section 5.2 says what it says does not create a genuine dispute of material fact for a jury. Accordingly, this testimony is not a basis for reconsideration.

Additionally, Plaintiff's argument that there is a genuine dispute over when commissions vest because Plaintiff received commission payments before the Plan year ended was already addressed and rejected by the Court. ECF 107, at 25–27. These payments were advances against compensation, and the fact that Plaintiff received incentive payments before the Plan year ended does not create a genuine dispute of fact over when commissions are earned or Veritas' authority to modify quotas throughout the year. Plaintiff disagrees with this and argues that the Plan does not allow "advances against compensation" because "advances" are used in other contexts by Defendant's employees, but purportedly not in the context of commission. ECF 119-1, at 6. However, this is merely an extension of an argument Plaintiff has made before, namely that the alleged fact that he got incentive payments throughout the year is evidence that he did not have to wait for the Plan to close in order to receive a commission. *Id.* Regardless of the label placed on such interim payments, it is clear that Veritas has discretion to modify quotas, thus the fact that

employees received payment throughout the year, rather than at the end of the year, is not enough to create a genuine dispute of fact as to when the commissions vest.

Plaintiff avers that the affidavit of co-worker Dan Vesek "is critical to Plaintiff's argument as it goes to the heart of the interpretation of the FY22 Plan." ECF 113-1, at 3 n.1. According to Plaintiff, Vesek's affidavit is "instructive in determining what reasonable employees believed the FY22 Plan to mean . . . it was the company's practice to pay employees earned commission once the customer paid and there was not a single instance cited by Defendant that they had withheld pay from employees because they did not earn commissions before the Plan's term ended due to the Plan being an 'annual plan.'" ECF 113-1, at 13. Defendant responds that the Court "deemed [Vesek's] personal experience with how Veritas administered plans in prior years immaterial," and while Plaintiff "can certainly disagree with the Court's assessment of [] Vesek's affidavit, [] that does not demonstrate the Court erred within the meaning of Rule 59(e)." ECF 116, at 7.

The Court previously held that "[l]ack of adjustment in the past does not nullify the plain language of the Plan, which confirms that quotas can be adjusted at Veritas' sole discretion during the fiscal year." ECF 107, at 24 n.26. While Plaintiff argues that "Vesek's affidavit provides the necessary context of how Veritas applies its Plan and how employees are paid," ECF 119-1, at 9, nothing in Vesek's affidavit creates a genuine dispute of fact over when commission is earned. Vesek asserts that "[b]ased upon Veritas' customs and practice, a deal is considered earned after a deal is booked and Veritas receives payment. Therefore, once the SSA Deal was booked and Veritas received payment, Mr. Moon and I earned commissions on the SSA Deal." ECF 97-4, at 4. But this is the type of conclusory allegation that fails to create a genuine dispute of fact at the summary judgment stage. *See Plantan v. Smith*, No. 22-cv-407, 2024 WL 3047993, at *19 (E.D. Va. June 18, 2024) ("[Plaintiff's] insistence on his single interpretation does not create a genuine

13

dispute, but instead borders on the sort of conclusory allegations and mere speculation that are disallowed at summary judgment.") (cleaned up). Moreover, Vesek states that "as based upon [his] sixteen (16) years of experience with the company [his] quota was never retroactively revised following the booking of a deal," ECF 97-4, at 5 ¶ 42, and that "[b]ased upon Veritas' customs and practice, the FY22 Comp Plan allowed Veritas to revise a quota for future deals that were not yet earned but could not retroactively revise your quota [] to reduce earned commissions." *Id.* ¶. 43. However, as Defendant previously pointed out, "Vesek does not actually know whether Veritas applied the 'custom and practice' in prior years and the record evidence of those knowledgeable about the topic contradict his belief." ECF 104, at 10. Defendant notes that "[t]he facts of *Marciniak* (quota adjustment made after multiple deals booked in FY20) demonstrates [] Vesek is wrong and Veritas adjusted quotas after deals booked in prior years." *Id.* at n.5. Thus, Vesek's affidavit does not create a genuine dispute of fact over the ambiguity in Section 5.2 of the contract because Vesek's interpretation does not "tend to show what *ambiguous language* in the contract meant *at the time it was entered into*." *Sprint Nextel Corp v. Wireless Buybacks Holdings, LLC,* 938 F.3d 113, 131–32 (4th Cir. 2019) (emphasis in original) (explaining that "[s]ubjective beliefs about the ultimate issue . . . are not especially helpful when untethered to the contractual language").

In short, Plaintiff has provided no basis for the Court to reconsider its finding that the Plan operates on an annual basis and Veritas had discretion to modify quotas at any point in the fiscal year, which as a result, altered entitlement to commission. Plaintiff was entitled to variable pay,

ECF 84-3, at 2, and the Plan specifically indicated that quotas are administered on an annual basis unless otherwise stated and Veritas retained discretion to modify quotas. ECF 84-3, at 2; ECF 84-1, at 7, 12–15. Defendant's modification of Plaintiff's

quota pursuant to its authority under the Plan did not change Plaintiff's entitlement to variable pay as part of the incentive program; it merely changed the amount Defendant had to pay. Because Defendant reserved the right to modify quotas at its discretion during the fiscal year, and no extrinsic evidence created a genuine dispute of fact over when commissions are deemed earned, there is no basis for reconsideration of the Court's decision.

Plaintiff also contends that the Court should not have relied on *Marciniak v. Veritas Technologies, LLC*, Civ. No. 20-1979, 2023 WL 417634, at *3 (D. Ariz. Jan. 26, 2023) because "the Arizona court interprets and relies upon an entirely different compensation plan and it provides no guidance as to how Veritas would apply the terms of the FY22 Plan." ECF 113-1, at 18. Defendant responds that "the Court relied on *Marciniak* because the material facts resemble this case: both plans are annual plans with annual quotas, Veritas retained discretion under both to modify quotas at any time, and both plaintiffs argued the plan prohibited retroactive reductions to earned commissions." ECF 116, at 11.

The Court did not rely on *Marciniak* to interpret the Plan terms. Rather, the Court merely cited *Marciniak* to explain that the court in that case "agree[d] [with Veritas] that changes to the annual quota are prospective, as those changes affected what that fiscal year's quota would be and not what a previous fiscal year's quota was." ECF 107, at 22 (citation omitted). The Court then concluded, based on its own analysis of the FY22 Plan terms that the quotas in this case similarly operate on an annual basis, and that extrinsic evidence shows that, despite ambiguity in Section 5.2, there is no genuine dispute that commissions vest at the end of the Plan year and Veritas retained discretion to make modifications to employees' quotas throughout the fiscal year. *Id.*

Plaintiff next attempts to re-litigate the forecasting issue. ECF 119-1, at 13–14. There is no genuine dispute over whether Veritas factored the SSA Deal into Moon's quota or whether Moon forecasted the deal. The Court has already determined:

> There is no genuine dispute over whether the SSA Deal was forecasted; the record shows it was not. *See* ECF 84-12, at 40, 154–55:15–1 (testimony by Moon that he did not know the order was coming and "[t]he quantity was definitely unexpected"); ECF 83-18, at 2 (email from Moon to Hyde stating "while [the SSA order] is GREAT NEWS, it does of course raise the question about why I didn't have it forecasted"); ECF 97-3, at 46, 182:8–183:6 (testimony by Hyde that she was "stunned" when Moon told her about the SSA Deal); ECF 84-9, at 5–6 (email from O'Connor asking "How far of a jump do we want to allow with this non-forecasted, non-quotaed deal?" and indicating in an earlier email that the SSA Deal "was not in the forecast or pipeline"). Because the deal was not expected or forecasted, it was not considered at the time Plaintiff's quota was initially set. Sections 3.1 and 3.2 explicitly allow quota adjustments when this occurs.

ECF 107, at 19–20. Plaintiff provides no compelling reason to revisit this determination, and the Court, consistent with its prior opinion, finds that Section 3.1(a) controls the circumstances here.

*Id.* at 19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮ (citing ECF 84-1, at 14).

Moreover, the Court did not misinterpret Plaintiff's deposition testimony. Plaintiff again insists that his testimony that Defendant could change his quota on a go-forward basis does not mean that he could un-earn commission on deals already closed. ECF 113-1, at 16–17. But this is just another attempt to claim that deals, and the corresponding commission, can be severed from the annual quota as soon as a deal closes and an invoice is paid. The Court has already found that the unambiguous contract language shows that quotas operate on an annual basis, and even if the contract language is susceptible to two interpretations regarding when commission is earned, a review of extrinsic evidence shows that there is no genuine dispute that the Plan operates on an

annual basis, and thus "a change could be made to the quota at any point during the fiscal year," subject to the plain language of Sections 3.1, 3.2 and 2.8. In short, this is just another attempt to re-litigate Plaintiff's argument that commissions can be earned prior to the year closing and thus insulated from any future modifications to the annual quota. The Court has already rejected this interpretation of the Plan because it defies the plain terms of the contract with respect to the quota operating on an annual basis and it contravenes the extrinsic evidence showing that commissions cannot be severed from the annual quota.

Next, Plaintiff argues that disregarding the 30-day time frame in Sections 3.4, 3.5, and 3.6 "render [the sections] illusory and entitle Veritas unilaterally and retroactively to deprive employees of earned commissions to its own advantage, contrary to Maryland law."[6] ECF 119-1, at 11. The Court addressed this argument in the prior opinion, and Plaintiff's allegation that the Court "ignore[d] this section of the Plan," is plainly incorrect. Plaintiff's argument that "[t]here is no legal basis to support the proposition that the Court must only give effect to Sections 2.8, 3.1 and 3.2 because to do otherwise would nullify these provisions," ignores the Court's detailed analysis of the interplay between Sections 2.8, 3.1, 3.2, 3.4, 3.5, and 3.6 and the Court's obligation to read a contract to "give effect to as many provisions as possible." *See Walker v. Dep't of Hum. Res.*, 842 A.2d 53, 61 (Md. 2004).

Plaintiff also argues that "[t]he Court's opinion mischaracterizes the evidence by finding that the CEC reviewed and approved Moon's quota modification on July 28, 2021." ECF 119-1, at 11. But this "finding," to the extent it can even be characterized as such, is not relevant to the

---

[6] Defendant responds that "the Court correctly recognized that if commissions vest before the end of the year, as [Plaintiff] suggests, much of Section 5.2 would be meaningless, and Veritas' authority to modify the Plan under Sections 2.8, 3.1, and 3.2 at any point during the year would serve no purpose." ECF 116, at 5.

Court's holding. The Court held that "[e]ven if Defendant failed to conduct review of a Deal within the requisite time period set forth in these three provisions, Defendant still had authority under Sections 2.8, 3.1 and 3.2 to prospectively modify the quota." ECF 107, at 21–22. Thus, this assertion provides no basis to reconsider the prior decision.

As in Plaintiff's prior briefing, Plaintiff again argues that "once Plaintiff booked the SSA Deal, as a result of his efforts in securing the BPA, there were no further steps for him to take, Veritas received full payment on June 10, 2021, and the elements of Section 5.2 were met, Plaintiff earned his commission," ECF 113-1, at 8, and thus "the evidence does not support a finding that Plaintiff did not earn his commission until after the end of the Plan year, [and] the Court cannot find that Veritas was within its discretion to modify Plaintiff's quota." ECF 119-1, at 10. The Court already rejected this exact argument. *See Panowicz v. Hancock*, Civ. No. DKC-11-2417, 2015 WL 5895528, at \*3 (D. Md. Oct. 5, 2015) (explaining that "Plaintiff's reiteration of prior arguments reveals a 'mere disagreement' with the court's decision and thus is an insufficient basis for [the] extraordinary remedy" of reconsideration under Rule 59(e) (citing *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993))). As the Court already pointed out, "under Sections 2.8, 3.1, and 3.2, Defendant could have changed Plaintiff's quota for any reason, subject to written approval of the CEC, during the remainder of the fiscal year, effectively bringing about the same change to the quota that is at issue here, but not directly tying the change to the SSA Deal." ECF 107, at 22. While the Court will take this opportunity to explicitly clarify that Section 5.2 is subject to more than one reasonable interpretation, and thus the Court analyzed extrinsic evidence to determine whether there was a genuine dispute of material fact for trial, the Court ultimately found, and re-affirms here, that there is no genuine dispute that commissions vested at the end of the fiscal year.

Plaintiff also argues that *Martignetti v. International Business Machines Corporation*, 855 F. App'x 857 (4th Cir. 2021) is distinguishable because in this case, there was a sum certain and "it is clear that Veritas did promise to pay a specific commission rate." ECF 113-1, at 25. Defendant responds that "[b]ecause the Plan governs variable pay and allows Veritas to review incentive compensation before making payment, it disclaims any entitlement to a specific commission amount just like [the] plan [in *Martignetti*]." ECF 116, at 12. The Court already rejected the argument that Plaintiff was entitled to a specific sum under the Plan. The Plan terms reveal that Plaintiff was entitled to "variable pay," not a specific sum. *See* ECF 84-3, at 2 ("Plan participants are not guaranteed any sum of commissions or bonus payments; they are eligible only to be allowed to work in accordance with the terms of the Plan, and thereby they are allowed the opportunity to earn commission [] in accordance with the terms of the Plan."). Thus, "the Plan disclaimed that Defendant was undertaking any contractual obligation to pay Plaintiff any *particular amount* of money and gave Defendant the right to review the formulaic amount of incentive compensation before Plaintiff received it and to adjust it if, in Defendant's sole discretion, the amount was disproportionate as a result of, *inter alia*, error, unforeseen circumstances, or windfall." ECF 107, at 28 (first citing ECF 84-3, at 2, then citing *Hoffeld v. Shepherd Elec. Co.*, 932 A.2d at 1197, 1207 (Md. App. 2007)). The Court's reliance on *Martignetti* was not clear error.

In short, the four corners of the contract do not necessarily provide an unambiguous answer as to when commissions vest, given the conditions set forth in Section 5.2. Thus, the Court relied on extrinsic evidence to determine whether a genuine dispute of material fact remained. The Court reasoned that because quota adjustments directly impacted Plaintiff's personal commission rate and, consequently, his variable pay, his commissions could not vest before Veritas closed out the

19

Plan year. *See* ECF 107, at 31 ("[T]he commission at issue was part of an annual quota, not a deal-based commission plan, and the quota was adjusted before the fiscal year ended, pursuant to the express terms in the Plan authorizing such modifications."). No reasonable juror could find that commissions are earned after the close and payment of a deal, such that those commissions are permanently insulated from modification, given that the unambiguous language of the contract indicates that the quota operates on an annual basis, Veritas retained discretion to modify quotas under specific circumstances, and the record evidence cited by Plaintiff failed to create a genuine dispute of fact over when commissions vest. Accordingly, the Court did not clearly err in concluding that, "regardless of when it recognized revenue for any particular sale, Veritas maintained sole discretion to adjust Plaintiff's quota, and thus as a result, adjust the variable pay." ECF 107, at 21. As the Court previously explained, "interpreting the Plan as Plaintiff suggests would nullify multiple provisions conferring discretion on the company to modify quotas within a fiscal year, which the Plan terms clearly state in Sections 3.1 and 3.2, as well as in Section 2.8, the governing authority of the plan." ECF 107, at 23. Thus, while Plaintiff again attempts to divorce his interpretation of when commission becomes "earned" from the Plan's plain language authorizing Defendant to modify Plaintiff's quota within a fiscal year, the Court has already rejected this argument and found that "Sections 3.1 and 3.2 are dispositive as to whether Defendant retained discretion to modify quotas at any point during the fiscal year." ECF 107, at 19. Accordingly, absent indication that this Court's opinion was founded on "clear error," there is no basis for reconsideration and Plaintiff's request shall be denied.[7]

---

[7] Plaintiff also argues that Veritas "failed to accurately pay Plaintiff based on even the unaccepted Revised Quota," and according to Plaintiff's calculations, he was deprived of $16.20 under the revised quota. ECF 113-1, at 26. Defendant responds that Plaintiff "makes this claim based on a spreadsheet—prepared by him or his legal team—and produced months after discovery closed," and further, Plaintiff "never alleged unpaid amounts under the revised quota in his Complaint."

Because there was no extrinsic evidence from which a reasonable juror could find that commissions could be severed from the annual quota in the way Plaintiff urges, the Court concluded that summary judgment was warranted even if Section 5.2 was ambiguous. *See Washington Metro. Area Transit Auth.*, 476 F.3d at 235 ("[S]ummary judgment is appropriate when the contract in question is unambiguous or when an ambiguity can be definitively resolved by reference to extrinsic evidence."). The Court found that the "isolated definition [in Section 5.2] can[not] be construed to mean that commission from a specific deal irrevocably vests as soon as these two conditions are met, thus nullifying the explicit disclaimers in the Plan reserving Veritas' right to adjust quotas." ECF 107, at 27 n.27. The Court is permitted to reach such a conclusion and sees no reason to reconsider that determination. Plaintiff's proffered evidence, as the Court explained, did not create a genuine dispute of fact over when commissions vest. For these reasons, the Court finds no clear error or manifest injustice that would warrant reconsideration.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion, ECF 112, is denied.

A separate implementing Order will issue.

Dated: May 5, 2025

/s/
Brendan A. Hurson
United States District Judge

---

ECF 116, at 13. According to Defendant, "[t]he Court should not permit [Plaintiff] to rely on inadmissible evidence and arguments he could not raise on summary judgment in a failed attempt to satisfy Rule 59(e)." *Id.* The Court finds that Plaintiff's claim for unpaid commission in the amount of $16.20 under the revised quota was not included in the Complaint. While litigants may not necessarily be required to amend a complaint to include alternative damages calculations, Plaintiff's claim that the commission under the revised quota was erroneously calculated goes well beyond a mere alteration to the amount owed. This is a separate claim of liability from Plaintiff's initial claim that there was no authority to modify commission after the deal closed and the invoice was paid. Thus, the Court declines to reconsider the prior opinion on this basis. *See Projects Mgmt. Co. v. DynCorp Int'l, LLC*, 17 F. Supp. 3d 539, 544 (E.D. Va. 2014) (denying reconsideration where "[Plaintiff's] new damages calculation was both conclusory and untimely, and it should have been provided to [Defendant] long before the close of discovery").